Argued November 30, 1927, affirmed January 17, 1928.

## PORTLAND v. RANSOM POSTILL.

(263 Pac. 896.)

**Eminent Domain—Award for Property Taken for Street Changes Held Properly Made in Lump Sum, Leaving for Subsequent Proceedings Determination of Claimants' Respective Shares.**

1. City charter provision relating to condemnation for widening and changing streets and providing for award of damages to be distributed by city auditor to persons interested in the property, and in case of doubt as to rights in such fund providing for inquiry by city council with right of appeal to Circuit Court and authorizing city council to direct a suit of interpleader or other proceeding to determine such rights, *held* to contemplate award of damages in a lump sum to parties claiming interest in property, leaving settlement of any controversy arising between lessee and lessor of premises condemned, or other claimants, as to their respective shares in the award, to subsequent proceedings between the claimants.

**Eminent Domain—Statute Authorizing Appeals in Condemnation Proceedings for Streets Held not to Affect City Charter Provisions for Lump Sum Award and Procedure on Appeal (Laws 1925, p. 550, Amending Or. L., § 3714).**

2. Laws of 1925, page 550, entitled, "An Act amending Section 3714, Oregon Laws, so as to authorize appeals to be taken in

certain cases from the action of municipal authorities in appropriating property for street and certain other purposes," should not be construed beyond its intent as so expressed in the title, and *did not affect city charter provisions relating to condemnation of property for street widening and changes, and for making a lump sum award, nor procedure on appeal provided in charter.*

**Eminent Domain—Evidence of Profits from Realty Taken is Inadmissible to Show Substantive Damages, but may be Admitted to Show Rental Value.**

3. Evidence of profits derived from use of property taken for street changes is not admissible to show substantive damages in condemnation proceedings, though in certain instances it may be admitted as indicating to some extent the rental value of the premises.

**Appeal and Error — Condemnation Defendant, Declining Court's Offer to Permit Evidence of Loss of Profits, Held not Entitled to Complain, on Appeal, of Previous Exclusion of Such Testimony.**

4. In proceeding to condemn defendant's leasehold for street purposes, where court after overruling defendant's offers of testimony to show the amount of profit he was making in his business withdrew such ruling and offered to permit such evidence to indicate rental value of the leasehold, which offer defendant declined, defendant was not entitled to complain on appeal that evidence was excluded.

**Eminent Domain—Under Statute Providing That Jury shall View Condemned Property Jury's Conclusions from Such View are Part of Evidence in Case.**

5. In ordinary condemnation cases, a view of the premises is within the discretion of the court, and it has no other effect than to enable jury to judge the testimony; but where statute expressly provides that jury "shall" view the property, the conclusions arrived at from such view are a part of the evidence in the case.

Appeal and Error, 3 C. J., p. 827, n. 57; 4 C. J., p. 698, n. 18.
Eminent Domain, 20 C. J., p. 850, n. 94, 96, p. 851, n. 97, p. 872, n. 75, p. 875, n. 14, p. 1013, n. 57, p. 1014, n. 58, p. 1089, n. 32, p. 1118, n. 15.
Statutes, 36 Cyc., p. 1107, n. 34, p. 1133, n. 91.

From Multnomah: GEORGE ROSSMAN, Judge.

3. Loss of profits or injury to business, as elements of damages, see note in Ann. Cas. 1918B, 869. See, also, 10 R. C. L. 217.
5. Impressions made on minds of jurors from view of premises as evidence in condemnation proceedings, see note in 10 Ann. Cas. 665. See, also, 10 R. C. L. 213.

In Banc.

This is an action, or rather a special proceeding, involving the condemnation of a portion of defendant's leasehold interest in lot 4, block 116, in the City of East Portland. The property involved in this appeal is located at the northeast corner of the intersection of said East Burnside Street and Grand Avenue, having a frontage of fifty feet on Grand Avenue and a side frontage of ninety feet on East Burnside Street. The premises are entirely occupied by buildings, the westerly portion being occupied by a two-story building and the easterly part by a one-story building. Two rooms of the building front on Grand Avenue. The corner room fronting on Grand Avenue is in use by the appellant, who has a lease on the property and uses this part for restaurant purposes. The northerly room is used by the appellant for a cardroom. The one-story building on the easterly portion of the lot fronts on East Burnside and is included in the appellant's lease, but is not in use for any purpose at present.

The appellant's lease also covers the upstairs part of the two-story building. Two rooms upstairs are rented to other parties and the remaining rooms are vacant, or are used by the appellant in connection with his restaurant business. Access to the upstairs part is gained by a stairway, the entrance to which is from Grand Avenue near the middle of the building.

The questions presented concern an interpretation of the charter provisions in relation to condemning property for the purpose of changing or widening a street, and also of the statute passed by the legislature of 1925, being Chapter 294, General Laws of Oregon for 1925, relating to the same subject.

The proceeding for acquiring property needed for this street extension and widening project is indicated under Section 321 and subsequent sections of the Portland charter. For the purposes of this case, these sections may be summarized as follows: When the council deems it necessary to widen or extend any street or streets, it shall by resolution direct the city engineer to make a survey and plat of the proposed change and a written report. The report of the engineer must contain such plat, together with a full description of the proposed changes, and "a description of each lot, tract or parcel of land or portion thereof to be appropriated, the amount of damages which in his judgment should be awarded for such appropriation, with the name of the owner or owners and other persons whom he may find to have any interest in or lien upon said property, a description of the boundaries of the district benefited and to be assessed for such improvement, and a description of each lot, tract or parcel of land (other than land taken) in such district with a just assessment of benefits thereto."

The city engineer must include in such report a summary showing the excess of benefits and excess of damages relative to lots, tracts or parcels of land, a part of which is embraced within such proposed taking, which damages and benefits may be offset *pro tanto.* This report is deemed a proposed award of damages and assessment of benefits. It must be filed with the auditor, whereupon the auditor must give notice by publication and mailing showing that such report is on file subject to examination, and specifying other matters and the date when it will come before the council for consideration and when objections thereto will be heard. The council, upon hearing the report and objections, may adopt the same or make

such modifications as it deems proper and thereupon pass an ordinance making an award of damages and an assessment of benefits concerning the property embraced in the report. An appeal may be taken to the Circuit Court by the owner or owners or any person having an interest in land or improvements to be appropriated, and any person against whose property an assessment of benefits is made by such ordinance. After the appeals are determined, if any are taken to the Circuit Court, a certified copy of the judgment on each appeal must be filed with the city auditor, whereupon the council shall, if it proposes to go forward with the project, direct the auditor to make entry in the docket of city liens of the amount assessed as benefits. Provision is made for making a deficit assessment in case the appeals result in a larger award, or a refunding assessment in case the appeals result in a smaller award.

When the money necessary to pay the damages has been raised and is in the hands of the city treasurer ready for distribution, the council may declare the specified property appropriated and the streets established according to the new width and extension.

Provision for paying the damages awarded is made by Section 327 of the amended charter of 1919, which is to the effect that—

"The auditor shall notify the persons who are supposed to be entitled to or interested in any portion of such fund that such fund has been provided and is ready for distribution and that a warrant will upon demand be drawn in favor of each person entitled thereto. Before drawing any such warrant the auditor shall inquire into the matter of city liens, and other liens, incumbrances and claims with reference to such property to the end that the title be cleared before or upon the payment of the award, and, in case

he be in doubt or uncertain as to the right of any person, he shall lay the matter before the council which shall inquire into and determine the same, subject to the right of appeal to the circuit court of the state of Oregon for Multnomah County as from an appeal from a judgment in the district court, and for the purpose of such inquiry, the council may summon parties and subpoena witnesses and grant a hearing and the council's determination shall be final if not reversed on appeal, or the council may direct that a suit of interpleader or other proceeding be instituted.''

The charter makes no provision for the procedure upon an appeal to the Circuit Court except by reference to Sections 401 and 402 of the 1903 charter. Such procedure is substantially the same as the procedure specified in the act of 1925, *supra,* except that it provides that the jury shall view the premises. While the statute of 1925 is lengthy, it is deemed proper to a correct understanding of the issues here presented, to give the same in full including the title. It is as follows:

### ''An Act

''Amending section 3714, Oregon Laws, so as to authorize appeals to be taken in certain cases from the action of municipal authorities in appropriating property for street and certain other purposes, and declaring an emergency.

''Be it enacted by the people of the state of Oregon:

''Section 1. That section 3714, Oregon Laws, be and the same hereby is amended so as to read as follows:

''Sec. 3714. Private Property May Be Condemned to Municipal Use. Whenever it shall be deemed to be necessary by the council of any incorporated city or town to take or damage private property for the purpose of establishing, laying out, extending or widening streets, or other public highways and places within any such city or town, or for the purpose of

rights of way for drains, sewers or aqueducts, or for the purpose of widening, straightening or diverting channels of streams and the improvement of water-fronts, and the council cannot agree with the owner thereof as to the price to be paid, the council may direct proceedings to be taken under the general laws of the state to procure the same. But a city or town may proceed to procure the same in the manner which is or may be provided in its charter, and the circuit court of the state of Oregon, for the county within which such city or town may be located, shall have jurisdiction and authority to hear, try and determine, in the manner that is or may be provided by the charter or ordinances of such city or town, any appeal or application for confirmation which may be taken or applied for in the time and manner stated in such charter or ordinances. Any owner, lessee, mortgagee or other person having an interest in or lien upon the property intended to be appropriated or assessed for such purpose by proceedings taken by the town or city council or other municipal officers shall have a right of appeal to the circuit court of the state of Oregon for the county in which such city or town is located from the final judgment or ordinance of such council or other authorities fixing the amount to be paid for or assessed against the property as to which an appeal is taken. The notice of appeal shall describe the property affected thereby and state the grounds of the appeal. These grounds of the appeal shall constitute the issues to be determined thereon. The fact that a juror may be a taxpayer upon property within said city shall not be ground for challenge unless he be the owner of property to be appropriated or to be assessed by a local assessment in such proceedings. In case of separate appeals with respect to the same property, all of the appeals with respect to that property shall be tried together. In such cases the verdict of the jury shall determine the gross amount of damages and the gross amount of benefits assessed with respect to the property embraced in the appeal and also a segregation of such amount with re-

spect to the different persons appealing so as to show the rights of the appellants with respect to such gross amount; provided, however, that if it appear to the court that the rights of any such appellants with respect to such property are in controversy, and if it further appear to the court that an adjudication of such rights will unreasonably delay the proposed improvement contemplated by such city or town, then the court may direct the jury to find only the lump sum amount and the rights of the parties with respect thereto shall be subsequently determined on such appeal or in such further proceedings as the court may direct. Such city or town may proceed to take the property to be appropriated whenever the amount in damages awarded on such appeal shall have been placed in the hands of the city treasurer for delivery to the owners, lessees, mortgagees and/or others having an interest by lien or otherwise in such property, and any further proceedings in court by writ of review, appeal or otherwise shall not prevent the city from taking such property when such fund shall have been created and placed in the hands of the treasurer for distribution as above stated, and in the event of any ultimate increase in the amount to be paid for taking any property, such city or town may provide therefor by a deficit assessment or by such other means as may be authorized by the charter and council of such city or town. Such appeal to the circuit court shall be taken within twenty days from the date of the judgment or ordinance of the municipal authorities or city council from which the appeal is taken. Notice of the appeal shall be served upon the officer of such municipality upon whom service of summons may be authorized and such notice shall be filed with the county clerk within said time. An undertaking on appeal shall, within five days after filing such notice, be likewise served and filed. Such undertaking shall be the same as upon appeal from a judgment in the justices' courts. On such appeal the municipality shall be regarded as the plaintiff and the appellant or appellants as defendants. Any num-

ber of persons affected by such judgment or ordinance
may join in the same appeal. No right of appeal
shall exist in cases where the charter of such city or
town shall require the city to take proceedings in such
court for a confirmation of the assessment of damages
and benefits, and provided that the right of appeal
to the supreme court from any judgment of the circuit
court is hereby given to all parties, or any one of
them, in said proceedings; and if any pending appeal
to the circuit court be held invalid, a new appeal in ac-
cordance herewith may be taken within twenty days
after the dismissal of such appeal. Vested rights of
those not appealing from any award of damages shall
attach to the award in lieu of the land taken. The
provisions hereof shall be applicable to every city and
town, whether organized under general law or other-
wise.''

This chapter contains an emergency clause, but it is
not necessary to quote it here.                AFFIRMED.

For appellant there was a brief over the name of
*Messrs. Malarkey, Seabrook & Dibble,* with an oral
argument by *Mr. E. B. Seabrook.*

For respondent there was a brief over the names
of *Mr. Frank S. Grant,* City Attorney, and *Mr. L. E.
Latourette,* Deputy City Attorney, with an oral argu-
ment by *Mr. Latourette.*

McBRIDE, J.—1. The main question presented
here is as to the method of awarding damages, it
being claimed by the appellant that, in making the
award of damages with respect to any lot or parcel
of land, the city engineer and the council must ascer-
tain and declare the rights of all parties interested,
and make a separate award of damages for each per-
son with respect to his rights in the property and

damages thereto. On the other hand, it is claimed by the respondent that such a course would be impracticable and that it is not required by the charter or statute; that both the charter and statute contemplate a making of the award of damages in a lump sum with respect to each parcel of land, or that part of which is taken, leaving to future action the ascertainment of the exact rights of various parties interested in the property, and making a distribution of the award money when the money is raised and ready for distribution. While the question is not free from doubt, and both the charter and the statute are somewhat ambiguous, we are inclined to hold with the respondent in regard to this part of the case. The provisions for distributing the fund seem to indicate that it was the intent of the charter to provide for ascertaining in gross the damages of all interested in the property and to defer the segregation until after such gross sum had been ascertained and deposited with the city treasurer.

The following excerpt clearly indicates that such is the intent of the charter.

"The auditor shall notify the persons who are supposed to be entitled to or interested in any portion of such fund that such fund has been provided and is ready for distribution and that a warrant will upon demand, be drawn in favor of each person entitled thereto. Before drawing any such warrant the auditor shall inquire into the matter of city liens, and other liens, incumbrances and claims with reference to such property to the end that the title be cleared before or upon the payment of the award, and, *in case he be in doubt or uncertain as to the right of any person, he shall lay the matter before the council which shall inquire into and determine the same, subject to the right of appeal to the circuit court of the state of*

*Oregon for Multnomah County as from an appeal
from a judgment in the district court, and for the
purpose of · such inquiry, the council may summon
parties and subpoena witnesses and grant a hearing
and the council's determination shall be final if not
reversed on appeal, or the council may direct that a
suit · of interpleader or other proceeding be insti-
tuted.''* (The italics are ours.)

Here, we have, first, a proceeding to ascertain the
value of the particular tract, or interest in a par-
ticular tract with a right of appeal in the first instance
to the Circuit Court from the award of the council;
second, a fund in gross deposited with the city treas-
urer for distribution by warrant drawn by the audi-
tor; and, third, a proceeding by which various claim-
ants of the fund can settle among themselves their
particular interests and the amount which each is
entitled to; and, unless this has been changed by the
statute heretofore referred to, it was the correct pro-
cedure to have been adopted in the present instance.

2. We do not infer that it was the intention of the
legislature to enact any provision which was to be
in effect broader than the title of the act. This act,
as will appear by the title, was to authorize appeals
to be taken in certain cases from the action of munici-
pal authorities in appropriating property for streets
or other purposes, and, should not be construed be-
yond its intent so expressed. The reason for the pas-
sage of this act was, no doubt, because a question has
been raised as to the right of the city by its charter
to provide for an appeal to the Circuit Court, the
theory being that, while it could legislate upon its
own internal affairs, it was not within the power of
the city, by charter or otherwise, to confer jurisdic-
tion upon or take jurisdiction from the Circuit Courts

of the state, and, to clear up this doubt, was evidently the principal intent of the enactment referred to.

It seems clear to us that the charter contemplated the award of damages, in a lump sum, to parties interested, or claiming to be interested, in the property sought to be condemned. There is an evident intent on the part of the lawmakers not to interfere with charter provisions. The question particularly raised here is as to the procedure upon appeal. The charter gives a right of appeal from the decision of the council to award a lump sum, which we have seen was authorized by the charter, leaving the distribution of the amount awarded to further consideration by the auditor and the council subject to the right of appeal. We do not think that it was the intent of the statute to take away this right or that it has done so by the terms of the act itself. It gives an appeal from the ordinance or other authorities fixing the amount to be paid and assessed against the property concerning which the appeal was taken. It is evidently in aid of the charter, instead of attempting to repeal it, or that portion of it, which states further that the notice of appeal shall describe the property as to which an appeal is taken. This was done, and it could only be done when it described the lot or parcel which the Sechtem Investment Company owned and upon which appellant had a lease; the rights of these parties being so intermingled that it would be impossible to describe one without referring to the other.

Counsel for appellant contends that the effect of the award of the city council was to award $15,150 to the lessee and nothing to the lessor. The fact is that it was an award in gross, and appellant's real grievance is, that it was insufficient in amount to cover his damages and those of his lessor, inasmuch as he claims

$25,000 and the whole award by the council covering the property was only $15,150.

It is ably and plausibly argued that he should have had a separate trial and a separate appeal for the special amount of his damages; but it is clear that this cannot now be had in the absence of the lessor, who did not appeal in this case, but who was practically content with the gross award. It may well be that a statute, which would have given him a separate appeal as to his own property and required a separate award by the council as to his own individual damages, would have been a simpler proceeding; but it is not unusual for statutes to provide for a gross sum to be paid as compensation leaving separate claimants to litigate between themselves as to the amount that each is entitled to. That is what we think is provided for in this case. We will not pretend to say what might have been the effect of the jury's finding if appellant had served a notice of appeal upon the lessor and thereby brought him into court. The statute does not provide for such a procedure, but probably does not prohibit it. The failure to so provide in case of several claimants to different interests in the property would seem to indicate an intent in the legislative mind that questions, between different claimants as to their share in the gross award, should be litigated between themselves and not with the condemning party.

The law authorizes in effect, as we take it, an investigation and trial as to the gross amount of damages to all interested in the property and then says to the claimants: "Gentlemen here is a fund in money deposited with the treasurer sufficient to cover all damages which any one of you may sustain. If

you differ among yourselves as to your individual
shares, we have left you a remedy as to each other,
but permit the improvement to go on.'' Any other
method would appear to be impractical in a case
where there were many claimants to different inter-
ests in the same property. As to this branch of the
case, we are of the opinion that the procedure adopted
by the court was in accordance with the charter and
the statute, and not·in violation of any prescription of
the Constitution.

3, 4. The appellant offered testimony tending to
show the amount of profit he was making by reason
of his restaurant business and also by reason of a
cardroom, which he claims brought him in a profit of
$25 a month. We think that the authorities are in
favor of the proposition, that evidence of profits of
this character is not admissible to show substantive
damages, although in certain instances it may be ad-
mitted as indicating to some extent the rental value
of the premises. The court overruled these offers,
but subsequently withdrew its ruling and offered to
allow appellant to introduce that evidence for the
purpose of indicating the rental value of defendant's
leasehold estate. Defendant declined to take advan-
tage of the offer of the court on that subject so he is
not in a position to complain here.

5. Various other rulings of the court on the admis-
sion or rejection of testimony are interposed and
urged; but on the whole we think the trial was fair
and that the defendant had ample opportunity to show
everything that really went to enhance his damages.
In view of all the testimony, the amount of award
seems to be smaller than the writer himself would
consider proper, but the jury had one advantage

which he has not. Section 401 of the original charter, which is still in force as a method of procedure, provides that the jury shall view the property, and it appears from the record that this was done in this case. In ordinary cases, a view of the premises is within the discretion of the court, and it has no other effect than to enable the jury to judge the testimony; but where the statute expressly provides that they *shall* view the property, the conclusions arrived at from such a view are part of the evidence in the case, and it may well be that having thus seen the property and had an opportunity to inspect it, observe the kind of a restaurant, the situation of the premises and to estimate for themselves the difficulties involved in making changes, their view of the testimony of the witnesses might have been modified thereby and we cannot say as to how such a view may have affected their verdict.

An interesting case on this subject is *Wakefield* v. *B. & M. R. R. Co.*, 63 Me. 385. It may be said that the case at bar fairly bristles with difficulties and the temptation to write an extended opinion is great, and the views presented here are by no means commensurate in length with the labor involved in this research; but taking the case as a whole, we think that the judgment of the lower court should be affirmed, and that if any controversy should arise between the lessee of the premises and the lessor as to their respective shares of the award, it should be settled in the manner provided in Section 327 of the amended charter of 1919.                    AFFIRMED.

ROSSMAN, J., not sitting.